MOERMAN *v.* CLARK-RUTKA-WEAVER CO.

1. Appeal and Error—New Trial—Overruling Motion—Reasons—Review.

This court cannot consider an assignment of error to the overruling of a motion for a new trial, where the trial court filed no reasons for the ruling complained of.

2. Same—Questions Considered—Variance.

Where the question of variance between the declaration and proof is not presented either by the motion to direct a verdict, the requests to charge, or the assignments of error, except the assignment upon the denial of the motion for a new trial, which the court cannot consider because no reasons were given for the ruling, the question of variance is not before the court.

3. Negligence—Elevators—Injury to Passenger—Trial—Instructions—Harmless Error.

Where, in an action for injuries received from a fall from an elevator in defendant's store, it appears that plaintiff was put upon the elevator by one of defendant's clerks and told to get off where it stopped, the clerk intending to send him to the third floor, and in response to special questions submitted by defendant the jury find that the elevator stopped at the second floor, where plaintiff was injured, and was started again by some one, error in instructions relative to defendant's duty to send an attendant with plaintiff or give him warning is immaterial.[1]

4. Same—Sufficiency of Evidence.

In an action for injuries received from a fall from an elevator in defendant's store, evidence examined, and *held*, sufficient to support a general verdict for plaintiff and a special finding that (the plaintiff being put upon the elevator by one of defendant's servants and told to get off where it stopped, the servant intending to send him to the third floor), the elevator stopped at the second floor, where plaintiff was injured, and was started again by some one.

Error to Kent; Wolcott, J. Submitted May 8, 1906. (Docket No. 97.) Decided September 20, 1906.

[1]As to liability for injury to elevator passenger, see note to *Edwards* v. *Manufacturers' Bldg. Co.* (R. I.), 2 L. R. A. (N. S.) 744.

Case by Henry Moerman against the Clark-Rutka-Weaver Company for personal injuries. There was judgment for plaintiff, and defendant brings error. Affirmed.

*Bundy, Travis & Merrick,* for appellant.

*Jesse F. Orton,* for appellee.

BLAIR, J. Plaintiff seeks in this action to recover damages suffered, as alleged, through negligent operation of defendant's elevator on September 6, 1904.

On the day in question, plaintiff procured from defendant a written order, permitting him to purchase certain door hangers at wholesale prices, with directions to present it at the back end of the store. Plaintiff presented the order to Mr. Fisher, a clerk of defendant, who directed him to get on the elevator and he would send him up to the floor where the door hangers would be found, not specifying what particular floor. There were three floors in the store above the basement, access to which from the elevator was by means of automatic gates. Plaintiff had been sent up to the second floor on this elevator on previous occasions, but never to the third floor. The door hangers were on the third floor, but this was unknown to plaintiff. The elevator was a freight elevator, operated by an electric motor. Various employés of defendant were accustomed to send the elevator up, but it was their duty when doing so to ring an alarm bell. Mr. Rutka, an officer of defendant company, testified:

"At the time of the accident and for some time before, I knew about customers being taken on the elevator; I did not know that at times the clerk did not go up with them; I supposed that there was always. I did not know. I frequently took customers up myself; do so now. Personally I never had occasion to send customers up alone. * * *

"*Q.* Whether or not you ever warned any of your clerks against sending customers on the elevator alone?

"(The defendant objects as immaterial. Objection overruled, and defendant excepts.)

"*A.* I don't recollect that I ever particularly mentioned it.   We have a sign on the elevator marked 'dangerous.' Don't remember just the words, but it indicates there that it is dangerous out towards the elevator.   That is the first thing you see when you go out there.   I don't remember that I absolutely ever called the boys together and said anything to warn them.   I may possibly have said it to them separately.   Samuel Fisher is our order clerk.   He puts up orders and obeys orders that are given him on paper.   When a customer brings an order Fisher takes it, goes where the goods are or sends the customer where they are."

Plaintiff testified:

"After Fisher had removed what was on the elevator at that time, he said for me to get on.   He would send me where I was to be.   That is all I recall that he said, and that I was to get the goods where the elevator would stop.   He did not tell me on which floor he was going to stop it.   I went up and got to the next floor and stopped, and I made a move to get off, and got one foot off, and the other was staying where it was, not being removed, and something came down and struck me right here above the eye, and that rendered me unconscious, and that is the last I recall.   I put one foot off on the floor, and the other remained upon the platform of the elevator.   *   *   *
"When the elevator reached the floor on which I attempted to get off, it was the first floor after it started. When I tried to step off, the platform of the elevator was somewhere near even with the floor.   *   *   *
"When I got to the second floor and the elevator stopped, the gate was up and out of the way.   I should think all of six feet high from the floor.   After I attempted to step off and was struck on the head, I cannot recall whether the elevator made any movement.   I can't tell whether the elevator made any movement at all after it stopped, and can't tell whether the gate made any movement after the elevator had gotten up there and stopped. When I got up to the second floor and was about to alight, there was no person in sight at that time.   *   *   *   I did not hear any word or sound coming from any person at that time.   When I first came to consciousness, after being rendered unconscious by this blow, I was at the bottom of the elevator shaft in the basement.   I was all up in a bunch down on the basement floor, and had both legs

broken from falling.  *  *  *  When going up on the elevator I stood near the center of the platform and did nothing on the way up besides standing there.  I did not touch the apparatus of the elevator.  I had no knowledge as to the means of operating or running the elevator and did not know in what way the elevator could be started or stopped.  *  *  *

"I think the platform was about 5x7 foot.  I think I stood pretty near the middle.  When the elevator started up I saw the gate come down, and when approaching the second floor, saw the second floor gate come up and knew it was there.  The platform of the elevator, when I started to get off, was somewhere near level with the surface of the second floor—somewhere near so any one could step off safely.  It might have been two or three inches above or below, I can't say exactly and did not notice.

"Q. You knew if the elevator started up, the gate would come down?

"A. Yes, sir.

"Q. And that the gate was right over the immediate entrance to the elevator?

"A. Yes, sir.  *  *  *  The elevator came to a dead stop at the second floor, I am sure of that, and it was at a dead stop when I put my foot on the floor, and the floor of the elevator was at a dead stop.

"Q. And did not start until you were struck in the head?

"A. No, sir.

"Q. So that the elevator, you are sure, did not start up when you were struck in the head?

"A. Not that I recall.

"Q. Well, your recollection is that it did not, is it not?

"A. Yes, sir.

"Q. And something struck you on the head?

"A. Yes, sir.

"Q. Thence on you knew nothing?

"A. Yes, sir.  *  *  *  When I started up in the elevator Fisher was at the southwest corner of the elevator at the starting chain or tiller rope.  Did not notice where he then went.  Did not notice him after I got beyond sight —after I started up, I did not notice, and when I went into the elevator on the first floor there was nobody else right near by except Fisher.  *  *  *  I have went up on that elevator alone before, at least twice.  Have been up sev-

eral times on it with somebody. Have been going there four or five years."

Plaintiff gave evidence tending to show that the elevator might stop without human intervention through the cable becoming slack and the weight of the chain pulling the contact off and that it had so stopped a number of times. But there was no evidence tending to show that the elevator could start or ever had started of itself. Plaintiff also introduced evidence tending to show that the ropes operating the gates might, and had, at times, become defective, and, giving way, allowed the gates to fall. At the close of plaintiff's testimony, defendant's counsel moved the court to direct a verdict for defendant for the following reasons:

"*First.* Because the evidence introduced has no tendency whatever to show the cause of the accident. There is nothing but mere speculation and conjecture open to the jury as to the immediate cause of the accident, or the proximate cause thereof. The only act of a distinctly careless nature, if we may call it that, which plaintiff has shown is the lack of an attendant upon the elevator. In order to recover against the defendant for the lack of an attendant upon the elevator, plaintiff must introduce some evidence to show that the lack of an attendant is the proximate cause of the injury resulting.   *   *   *

"*Second.* Because the plaintiff was guilty of contributory negligence.

"*Third.* Because the plaintiff has not proved any act of negligence, or alleged act of negligence, that caused the injury."

This motion was overruled, and defendant put in its proofs. At the close of the case, defendant, by its first request to charge, raised substantially the same questions, as follows:

"That the jury is directed to find a verdict for the defendant for the following reasons, namely:

"(*a*) Because there is no evidence in the case of actionable negligence.

"(*b*) Because the plaintiff was, as a matter of law, guilty of contributory negligence.

"(c) Because, as a matter of law, neither the lack of an attendant upon the elevator nor the omission of defendant to give any warning to the plaintiff, was the proximate cause of the injury complained of.

"(d) Because the injury complained of, so far as the evidence shows how it was received, was not the natural and probable consequence either of the lack of an attendant upon the elevator or of defendant's omission to give any warning to the plaintiff.

"(e) Because whatever may have been the cause of the injury complained of, that cause, and not the remote facts of the lack of an attendant or of defendant's omission to warn the plaintiff, was the proximate cause of the injury complained of.

"(f) Because, as a matter of law, the proximate cause of the injury complained of has not been shown by the plaintiff."

The court submitted the case to the jury, together with certain special questions propounded by defendant, as follows:

"1. Did the elevator in question, with the plaintiff on it, come to a stop at the time of the accident at the second floor of the defendant's store when the floor of the elevator was about even with said second floor?

"2. Was the elevator stationary when plaintiff received his first blow or injury?

"3. Did the rope or cord that moved the elevator gate at the second floor, up and down, break at the time of the accident to plaintiff?

"4. If the elevator stopped with its platform at or about even with the second floor, with plaintiff on it at the time of the accident, did any person start it upward again before plaintiff fell down the shaft?"

The jury found a verdict in favor of plaintiff, returning with their verdict the following answers to the special questions:

"Answer to special question 1, 'Yes.' Answer to special question 2, 'No.' Answer to special question 3, 'No.' Answer to special question 4, 'Yes.'"

After the rendition of the verdict, defendant's counsel made a motion for a new trial and assigns error upon the

145 MICH.—35.

refusal of the circuit judge to grant the same. No reasons of the trial judge for overruling the motion appear in the record, and, as we have repeatedly held, we cannot consider the assignment.

Counsel for defendant argue that there was a variance between the declaration and the proofs. Neither in the motion to direct a verdict, the requests to charge, nor the assignments of error, except the assignment upon the denial of the motion for a new trial, is this question presented, and we cannot consider it upon this record.

The first ten assignments and the twelfth relate to rulings of the court upon questions of the admissibility of testimony; the eleventh and thirteenth assignments relate to the denial of defendant's motion for verdict and the refusal to give the first request to charge; the fourteenth to the twentieth inclusive relate to the refusal of the court to give requests to charge. The twenty-first, twenty-second, and twenty-third assignments are as follows:

"21. In instructing the jury as follows: 'If, on the other hand, you find that the plaintiff was not told at what floor to alight, but was told the elevator would stop at the place for him to get off, and if the defendant knew or had reason to believe that the elevator might stop of itself at the second floor, or stop and start again, without any person's intervention, you would be warranted in finding that the defendant was negligent in not sending an attendant or giving notice of warning to the plaintiff.'

"22. In instructing the jury as follows: 'If you find that the elevator did stop at the second floor; that the plaintiff had been told it would stop where he was to get off; that it started again before plaintiff had time to alight, and thereby caused his injury; and that by the exercise of reasonable care the defendant might have anticipated such a result and prevented it, either by so adjusting the elevator appliances that it would not start or stop without being operated, or by sending with plaintiff an attendant or conductor on the elevator, you would then be authorized to find negligence on the part of the defendant, if you find such facts, and find that they were the proximate cause of the injury.'

"23. In instructing the jury as follows: 'In considering

this first question of whether or not the defendant is shown by the evidence to have been guilty of negligence which was the proximate cause of the injury, you can consider whether or not it was the defendant's duty to send an attendant with the plaintiff on the elevator or to give him notice or warning in regard to his conduct in riding alone upon the elevator. The court cannot say to you, as a matter of law, that it was the duty of the defendant to send a conductor or attendant with the plaintiff on the elevator, or to give him any warning or notice. That may depend on what you find in regard to other facts.'"

In view of the answers of the jury to the special questions, we are satisfied that the alleged errors could not have prejudiced defendant and we therefore do not consider it necessary to discuss them. Whether the elevator stopped at the second floor because of a slack cable or otherwise, plaintiff swore positively that it did stop, and this was the only testimony in the case that it did stop. The jury believed the plaintiff's testimony as against equally positive testimony of defendant's witnesses that the elevator did not stop till it reached the third floor. The whole record discloses that the elevator could not start automatically from a position of rest but required human intervention to put it in operation. Defendant's employés on the different floors had a right and were accustomed to start the elevator. We cannot say, as a matter of law, that the answer of the jury to special question 4 was unsupported by the evidence. This question was submitted to the jury by defendant. There was evidence, we think, to justify the finding and which supported the general verdict. In view of this finding of a positive act of negligence, which the evidence under this record warranted the jury in attributing to the defendant, it was immaterial whether the failure to send an attendant with, or give warning to, plaintiff was the proximate cause of the injury.

The judgment is affirmed.

CARPENTER, C. J., and MCALVAY, HOOKER, and MOORE, JJ., concurred.